UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 10bk51428 |
| | ) | |
| Kelco Metals, Inc., | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Judge Timothy A. Barnes |
| | ) | |

TIMOTHY A. BARNES, Judge

MEMORANDUM DECISION

Before the court is the Amended Motion to Allow Claim and Amend Trustee's Final Report in Part (the "Amended Motion"), filed by BCC Steel, Inc. ("BCC"), in which BCC seeks to have the court allow its claim and deem that claim timely under Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules" and hereinafter as to each, "Rule ___"), and have the court amend the approved final report to include its claim. Horace Fox, Jr. (the "Trustee"), in his capacity as trustee of the bankruptcy estate of Kelco Metals, Inc. (the "Debtor"), argues that BCC failed to properly file its claim electronically, that BCC is not entitled to relief under Rule 9006 or otherwise, and that BCC is not entitled to distributions under a final report. For the reasons set forth herein, the court denies the Amended Motion.

JURISDICTION

Federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). Federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under the Bankruptcy Code, or arising in, or related to cases under title 11. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred may enter final judgment on any core proceeding arising under the Bankruptcy Code or arising in a case under title 11. 28 U.S.C. § 157(b)(1). A motion regarding the allowance of claims against the bankruptcy estate may only arise in a case under title 11 and is specified as a core proceeding. 28 U.S.C. § 157(b)(2)(B). Such matters are within the court's constitutional authority. *Stern v. Marshall*, 131 S. Ct. 2594, 2618 (2011).

Accordingly, final judgment is within the scope of the court's authority.

PROCEDURAL HISTORY

In considering the Amended Motion, the court has considered the arguments of the parties at the February 25, 2015 hearing on the Final Report (as defined below), the March 10, 2015 hearing on the Original Motion (as defined below) and the May 19, 2015 hearing on the Amended Motion,

and has reviewed the Amended Motion [Dkt. No. 164], the attached exhibits submitted in conjunction therewith and each of the following:

(1) Notice Fixing Time for Filing Claims [Dkt. No. 16] (the "Bar Date Notice");

(2) BNC Certificate of Service – Notice Fixing Time for Filing Claims [Dkt. No. 18], with B10 (Official Form 10) – Proof of Claim (the "Proof of Claim Form");

(3) Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors & Deadlines [Dkt. No. 21] (the "341 Notice");

(4) Trustee's Final Report [Dkt. No. 151];

(5) Notice of Trustee's Final Report and Application for Compensation and Deadline to Objection (NFR) [Dkt. No. 155] (the "Final Report Notice");

(6) Amended Trustee's Final Report (TFR) [Dkt. No. 158] (the "Final Report");

(7) Motion to Allow Claim [Dkt. No. 161] (the "Original Motion");

(8) Response of Horace Fox, Jr., as Trustee, to Amended Motion to Allow Claim and Amend Trustee's Amended Final Report In Part [Dkt. No. 172] (the "Response"); and

(9) BCC Steel's Reply to Trustee Horace Fox's Response to BCC's Memorandum in Support of Its Amended Motion to Allow Claim and Amend Trustee's Amended Final Report In Part Pursuant to Federal Rules of Bankruptcy Procedure 9006(b) [Dkt. No. 173] (the "Reply").

The court has also taken into consideration any and all exhibits submitted in conjunction with the foregoing. Though these items do not constitute an exhaustive list of the filings in the above-captioned bankruptcy case, the court has taken judicial notice of the contents of the docket in this matter. *See Levine v. Egidi*, No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993) (authorizing a bankruptcy court to take judicial notice of its own docket); *In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 1989) (Goldgar, J.) (recognizing same).

BACKGROUND

This matter arises out of multiple failures of a creditor, BCC, to comply with the local rules and orders of the court. BCC now seeks to rectify those failures in the form of a motion that has no statutory basis or case law to support it.

In order to understand BCC's request, the history of what has transpired must be considered. This bankruptcy case was commenced by seven of the Debtor's creditors on November 17, 2010. BCC was one of the petitioning creditors. Shortly thereafter, the court entered an order for involuntary relief as to the Debtor under chapter 7 of the Bankruptcy Code and appointed the Trustee to administer the bankruptcy estate.

The Trustee determined that there were assets to be administered for the benefit of creditors and filed the Bar Date Notice on January 12, 2011. The Bar Date Notice states, in bold, "[a]ttorneys

*must* file this claim electronically via the CM/ECF system. Non-Attorneys may file in person or by mail at the Clerk of the Bankruptcy Court's address shown at the top of the form. If you wish to file a claim, please use the attached Proof of Claim form." Bar Date Notice, at 1 (emphasis added). The Bar Date Notice was mailed with the Proof of Claim Form to BCC at the address provided by the petitioning creditors.

The clerk of the court sent out the 341 Notice – derived from a national bankruptcy form for use in chapter 7 cases – on January 20, 2011. The 341 Notice, which also provides information on filing claims, provided that May 17, 2011 was the deadline for all creditors (except a governmental unit) to file a claim (the "Bar Date"). The 341 Notice was mailed to BCC at the address noted above.

BCC alleges that, on April 11, 2011, it tendered a paper copy of its claim (the "BCC Claim") to the office of the clerk of the court and received a copy of the claim with a stamp from the clerk of the court indicating that the BCC Claim had been received on the same date. BCC offers a copy of what appears to be a date-stamped claim in support of this contention. The BCC Claim was, however, not added to the claims register.

BCC did not, apparently, check the claims register and did not take any action to remedy the omission of the BCC Claim from the claims register for almost four years.

On January 30, 2015, the Trustee filed his final report of the bankruptcy estate of the Debtor and amended the report on February 20, 2015, which Final Report is the subject of this opinion. The Final Report, both originally and as amended, did not include the BCC Claim in the proposed distributions. This omission was evidently due to the absence of the BCC Claim from the claims register of this case.

On February 2, 2015, the Trustee filed the Final Report Notice. The Final Report Notice clearly provides the following instructions for objecting to the distribution proposed in the Final Report, as follows:

> *Any person wishing to object* to any fee application that has not already been approved or *to the Final report*, must file a written objection within 21 days from the mailing of this notice, serve a copy of the objections upon the trustee, any party whose application is being challenged and the United States Trustee. A hearing on the fee applications and any objection to the Final Report will be held at 10:30 a.m. on 02/25/2015, in Courtroom 613, United States Courthouse, 219 S. Dearborn, Chicago, IL 60604. *If no objections are filed*, upon entry of an order on the fee applications, the trustee may pay dividends pursuant to FRBP 3009 without further order of the Court.

Final Report Notice, at 1 (emphasis added).

On February 16, 2015, BCC emailed counsel for the Trustee a copy of the BCC Claim to inquire whether an objection to the Final Report was necessary. Despite being within the time to file an objection set by the Final Report Notice and having knowledge of that deadline, BCC never filed an objection. Rather than file a written objection to the Final Report or dispute the proposed distribution, however, BCC chose to contact the clerk of the court's office and request that the

clerk's office alter the claims register. Without advising the court, the clerk's office added the copy of the BCC Claim to the claims register on February 25, 2015, backdating the filing date to April 11, 2011.

On that same day, February 25, 2015, in accordance with the Final Report Notice, the court held a hearing on the Final Report. At that hearing, the Trustee and his counsel informed the court that the Trustee's counsel was contacted by a creditor and that there may be a new, pending claim that was not previously on the claims register. The Trustee's counsel informed the court that the creditor had contacted counsel to the Trustee and inquired whether an objection to the Final Report was necessary, but the Trustee's counsel declined to give the creditor legal advice. The Trustee's counsel directed the creditor to address any request for relief to the court. During the hearing, the court was able to confirm that the BCC Claim had been added to the claims register that morning, but noted that the claim appeared problematic, as it was dated as filed on April 11, 2011 despite being entered only a few hours earlier.

BCC failed to appear at the hearing to explain what had happened or to voice an objection to the Final Report's omission of the BCC Claim. With no objections to the Final Report on file by the deadline established in the Final Report Notice or voiced at the hearing and with no appearance from BCC at the hearing to explain the BCC Claim, despite the exchange that occurred between the court, the Trustee and counsel for the Trustee, the court approved the Final Report.

BCC subsequently filed the Original Motion on March 5, 2015 and noticed the hearing for March 10, 2015.[1] The Original Motion relied, in part, on Rule 5005(c). At the hearing on the Original Motion, the court noted that BCC's reliance on Rule 5005(c) was misplaced as BCC was not arguing that the BCC Claim had been erroneously delivered to a wrong party. As the issues raised were novel, the court nonetheless continued the Original Motion and granted leave to file an amended motion more clearly articulating grounds for allowing the BCC Claim and specifically addressing how the previously approved Final Report should be treated.

On March 30, 2015, BCC filed the Amended Motion. This matter is now fully briefed and ripe for ruling.

## DISCUSSION

In recent years, the court has seen an increasing number of motions seeking court orders allowing claims. In the absence of an objection, however, there is no provision of the Bankruptcy Code that authorizes the court to enter such an order. Allowance of such claims is, instead, a function of the Bankruptcy Code itself. Section 502(a) of the Bankruptcy Code provides that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects." 11 U.S.C. § 502(a); cf. 11 U.S.C. § 503(b) (which provides for allowance of administrative expenses by court order even in the absence of an objection). In

---

[1] The Original Motion was filed on shortened notice without seeking leave and without a certificate of service. No certificate of service was ever filed concerning the Original Motion or the Amended Motion. The court has no reason to believe, therefore, that either was served on any other creditor despite seeking to affect those creditors' rights to distribution as set forth in the approved Final Report.

4

chapter 7 cases, a claim is either: (i) filed and, if no party in interest objects, allowed; (ii) filed and determined upon an objection; or (iii) not filed and, therefore, not allowed.

The true relief sought in many of these motions is a determination by the court as to the priority and amount of a claim. *See e.g. In re Elk Grove Vill. Petroleum*, 510 B.R. 594 (Bankr. N.D. Ill. 2014) (Barnes, J.) (ruling on competing motions to allow claims by determining priority of claims in proceeds of sale of estate assets). Though couched in the terms of timeliness, this motion is no different.

The BCC Claim was filed as an unsecured claim in the amount of $128,081.87 and is now listed on the claims register. No party has objected to the BCC Claim. Regardless of when the BCC claim was filed, the BCC Claim is, therefore, an allowed unsecured claim for $128,081.87. 11 U.S.C. § 502(a). Allowance, therefore, is not under consideration.

Priority of the BCC Claim, however, is a different matter. In chapter 7 cases, priority of an allowed unsecured claim is, in part, dependent upon the date that it was filed. 11 U.S.C. § 726(a)(2). In this regard, BCC is right to focus on the timeliness of the BCC Claim.

BCC argues that the BCC Claim is timely as it was filed on April 11, 2011, the date in the stamp appearing on the copy of the BCC Claim that was tendered to the court.[2] BCC, therefore, seeks distributions as the holder of a timely, allowed unsecured claim under the chapter 7 priority scheme. The court has, however, already approved distributions pursuant to the Final Report, which did not include the BCC Claim. As a result, BCC also seeks to have that report amended.

In order to determine both of BCC's requests – that the BCC Claim be allowed as timely and that the Final Report be amended – the court must first determine whether the BCC Claim is a timely, allowed unsecured claim. Only after that determination must the court examine if BCC's arguments to excuse noncompliance need be addressed and, ultimately, if amendment of the Final Report is proper.

A.      Compliance of the BCC Claim with Rule 3002

Rule 3002 states that an unsecured creditor in a chapter 7 case must file a proof of claim for that claim to be allowed. Fed. R. Bankr. P. 3002(a). Rule 3002 further provides when such a proof of claim is to be filed. Fed R. Bankr. P. 3002(c). Rule 3002(c) states with respect to the time for filing a claim that "a proof of claim is timely filed if it is filed not later than 90 days after the first date set for the meeting of creditors...." Fed. R. Bank. P. 3002(c).

Though the validity of the date-stamped claim form provided by BCC has never been conclusively established, the parties appear to agree that this document was given to the office of the clerk of the court prior to the deadline set forth under Rule 3002(c). This is only half of the inquiry,

---

[2] BCC did not seek to correct the record, pursuant to 28 U.S.C. § 1734, by supplying the court with a proper application to substitute a copy certified by the clerk of the court for a lost or destroyed record. There is nothing in the record to demonstrate that the BCC Claim now on file is a copy certified by the clerk of the court to be the claim BCC alleges to have tendered on the earlier date. The court, therefore, is unable to determine whether the BCC Claim is an accurate copy. As this issue has not been raised by either of the parties, the court will leave this determination to a later date should this issue arise.

however, as for a proof of claim to be timely filed it must both be *timely* and *filed*. *In re Schaffer*, 173 B.R. 393, 397 (Bankr. N.D. Ill. 1994) (DeGunther, J.) (in order for its claim to have a legal effect, a creditor must comply with the procedure for filing).

In general, for a claim to be properly "filed," it must appear in the records of the bankruptcy court. *In re Evanston Motor Co., Inc.*, 26 B.R. 998, 1004 (N.D. Ill. 1983) *aff'd*, 735 F.2d 1029 (7th Cir. 1984). Rule 3002(b) sets forth parameters for how that happens, stating that "[a] proof claim or interest *shall* be filed in accordance with Rule 5005." Fed. R. Bankr. P. 3002(b) (emphasis added). Rule 5005, in turn, empowers the court to adopt local rules that require documents to be filed by electronic means. Fed. R. Bankr. P. 5005(a)(2). This court has adopted such a local rule.

Local Bankruptcy Rule 5005-1(B), titled "Electronic Case Filing," provides: "Pursuant to Fed. R. Bankr. P. 5005(a)(2), all documents must be filed in accordance with the Administrative Procedures." Bankr. N.D. Ill. R. 5005-1(B). "Administrative Procedures" means the "the Administrative Procedures for the Case Management/Electronic Case Filing System, adopted by the court on February 17, 2004, as amended." Bankr. N.D. Ill. R. 1000-1(1) (hereinafter, the "Administrative Procedures"). Subsection II.A.1.a. of the Administrative Procedures, entitled "Electronic Filing Mandatory," states:

> Except as expressly provided in paragraph III, and except for circumstances that temporarily prevent a Registrant from filing electronically, all petitions, motions, applications, notices, pleadings, memoranda of law, *and other documents* filed with the court in connection with a Bankruptcy Case must be filed electronically. Individuals without legal representation may file documents in paper form with the clerk's office where the documents will be scanned into the System.

Bankr. N.D. Ill. Admin. Pro. II.A.1.a (emphasis added).[3] The only exception for counsel from electronic filing states:

> In an emergency, an attorney not admitted to practice before the District Court and not having an office in this district may file documents in Bankruptcy Cases in paper form if it is impracticable to become a Registrant or engage local counsel prior to filing the documents. However, the paper filing must be followed by a motion seeking leave to file in paper form and showing cause for not becoming a Registrant and for not engaging local counsel in time to file the documents electronically.

Id. at I.D.2.

Though counsel for BCC has an office in this district (and the emergency exception was therefore inapplicable), counsel did not become trained to file electronically or gain Registrant status

---

[3] In order to file documents electronically as required by the Administrative Procedures, all attorneys are required to become a registrant with the court's CM/ECF system. See Bankr. N.D. Ill. Admin. Pro. I.B and I.C.3.

6

with the court until after the court had approved the Final Report.[4] As a result, the BCC Claim was not filed electronically as required by the Local Bankruptcy Rules and the Bar Date Notice.

While parties appearing *pro se* are excepted from the mandatory electronic filing procedures, Bankr. N.D. Ill. Admin. Pro. II.A.1.a, BCC was not *pro se* and not, therefore, entitled to invoke this exception. Moreover, BCC is not an individual covered by this exception as it is a corporation ineligible to appear *pro se* in legal proceedings. *Muhammad v. Reed (In re Reed)*, No. 13ap01294, 2015 WL 3862500, at *8 (Bankr. N.D. Ill. June 22, 2015) (Barnes, J.). BCC was required to act through counsel and such counsel was required to comply with the rules applicable to it, or to associate with co-counsel who could.

Despite its failure to comply with the applicable rules, BCC's primary argument is that the BCC Claim was timely "because the [BCC] Claim was received by the bankruptcy court clerk and filed pursuant to instructions on the Proof of Claim form." Reply, at 2.

But, the existence of a local rule requiring electronic filing is clearly set forth in the Bar Date Notice, which was transmitted on top of the Proof of Claim Form. The Bar Date Notice is precise and to the point, stating that "[a]ttorneys must file this claim electronically via the CM/ECF system." Bar Date Notice, at 1. This language is set forth in bold. BCC never claims to have not received the Bar Date Notice. The Proof of Claim Form that BCC filled out, and in which BCC relies on other language, also notes the possibility of local rules governing a claims submission.[5]

Instead, BCC relies on the general language in the national forms – the Proof of Claim Form and the 341 Notice[6] – to argue that the court should ignore the direct, specific instructions on the

---

[4]    Counsel admits that he did so in order "to make the [Original] Motion and the Amended Motion." Mem. in Support of Amended Motion, at 5.

[5]    The instructions attached to the Proof of Claim Form provide:

> Date and Signature: The person filing this proof of claim must sign and date it. FRBP 9011. *If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature.*
>
> ...
>
> Proof of Claim: A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

Proof of Claim Form, at 4 (emphasis added).

[6]    The 341 Notice provides:

> Claims: A Proof of Claim is a signed statement describing a creditor's claim. ... *If you do not file a Proof of Claim by the "Deadline to file a Proof of Claim" listed on the front side, you might not be paid any money on your claim from other assets in the bankruptcy case.* To be paid, you must file a Proof of Claim even if your claim is listed in the schedules filed by the debtor. Filing a Proof of Claim submits the creditor to the jurisdiction of the bankruptcy court, with consequences a lawyer can explain.

341 Notice, at 2 (emphasis added).

7

Bar Date Notice and the electronic filing requirements required by the Local Bankruptcy Rules. BCC cites no law in support of this contention.

In the first instance, the court finds no contradiction between the Proof of Claim Form, the Bar Date Notice, the 341 Notice and the applicable statute and rules. One court, in considering a similar alleged contradiction in the context of a proof of claim, held that it is Rule 3002 that is used to determine whether a claim is timely or tardy, and that the instructional language of a form may not override the clear language of the Bankruptcy Code and the Bankruptcy Rules. *In re Dove-Nation*, 318 B.R. 147, 152 (B.A.P. 8th Cir. 2004). This court agrees. By extension, it is Rule 5005 and Local Bankruptcy Rule 5005-1(B) that govern the propriety of the filing for the purposes of Rule 3002. A claim is filed for purposes of Rule 3002 when the proper procedure has been followed, and that procedure was not followed here.

In the second instance, BCC's argument flies in the face of the long standing rule of legal interpretation that when a conflict is perceived, specific language controls over more general language. *See Nat'l Cable & Telecommunications Ass'n, Inc. v. Gulf Power Co.*, 534 U.S. 327, 335 (2002) ("It is true that specific statutory language should control more general language when there is a conflict between the two."); *Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 984 F.2d 223, 227 (7th Cir. 1993) (same, with respect to contract interpretation). Thus, even if the general language contradicted the specific, it would be the specific language that governed. That specific language provided a roadmap for compliance that BCC failed to follow.

The BCC Claim may have been given to the office of the clerk of the court in 2011, but it was not filed in the manner required and, as a result, did not appear on the claims register until February 25, 2015. Prior to that date, there was no claim by BCC on file. The correct filing date of the BCC Claim pursuant to Rule 3002 is, therefore, February 25, 2015. The deadline for unsecured creditors to file claims in this case was May 17, 2011 and the BCC Claim, an unsecured claim, was filed beyond the applicable claims deadline. The BCC Claim is, therefore, a tardily filed general unsecured claim for purposes of distribution.

B.  <u>BCC's Arguments as to Excuse Compliance with Rule 3002</u>

Having determined that the BCC Claim did not comply with Rule 3002 until February 25, 2015, the court must still consider BCC's arguments regarding extensions and acts of others as affecting compliance with Rule 3002.

These arguments, as set forth in the Amended Motion and the Reply,[7] are as follows: BCC argues that its failure to file the BCC Claim was the result of excusable neglect and that the BCC Claim, therefore, should be allowed as a timely general unsecured claim pursuant to Rule 9006. This argument obviously contradicts the position taken by BCC later that the BCC Claim was timely and, therefore, no extension is necessary, but each will nonetheless be considered independently in the alternative. BCC also argues that the Local Rules of the Bankruptcy Court of the Central District of Illinois, the failure of the office of the clerk of the court to educate counsel for BCC of the local

---

[7]    As noted above, BCC's first argument in the Original Motion was that Rule 5005(c) governed. That argument was rejected as Rule 5005(c) clearly does not apply to the facts of this dispute.

practice requirements and the failure of the court to issue an order to show cause create some sort of equitable excuse for the court to deem the BCC Claim timely filed.

The court will consider each argument, in turn.

1. Rule 9006

Rule 9006 governs requests to enlarge time for deadlines to act. Fed. R. Bankr. P. 9006(b). BCC's reliance on Rule 9006 is misplaced.

The Seventh Circuit has expressly rejected arguments relying on Rule 9006 to extend the time to file claims in chapter 7 cases. *See In re marchFIRST, Inc.*, 573 F.3d 414, 417 n.1 (7th Cir. 2009). The defense of excusable neglect for failure to comply with deadlines to file claims is not available in chapter 7 bankruptcy cases. This has been the law of this Circuit for over 20 years. *In re De Vries Grain & Fertilizer, Inc.*, 12 F.3d 101, 105 (7th Cir. 1993). The Trustee correctly notes the above in his filings. BCC's Rule 9006 argument is, therefore, rejected.

2. Local Bankruptcy Rules of the Central District of Illinois

BCC's reliance on the Local Bankruptcy Rules of the Central District of Illinois is, quite frankly, perplexing. BCC argues that because both the Local Bankruptcy Rules of this court and the local rules of the Central District permit the court to enter an order to show cause upon the failure of counsel to comply with the electronic filing requirement, this court should adopt the Local Bankruptcy Rules of the Central District in other respects. Specifically, BCC urges this court to follow the Central District's rule that a paper claim is considered "filed" until the court takes an affirmative action to strike the claim after the conclusion of the show cause hearing. Bankr. C.D. Ill. R. 5-1.

But that is not the rule of this court and BCC's argument in this regard therefore states no cognizable legal basis for ruling in its favor. *Cf. In re Chase*, 372 B.R. 142 (Bankr. S.D.N.Y. 2007) (differences in procedure under local bankruptcy rule for district in which attorney usually practiced bankruptcy law did not excuse attorney's failure to comply with rule in proceeding in another court). There are proper methods of amending the Local Bankruptcy Rules and this is not one of them. The Central District's rules have no bearing in this matter.

3. Order to Show Cause

BCC also argues that, had counsel for BCC been ordered to show cause, he would have had time to comply by filing the BCC claim electronically. As noted above, the court rejects the argument that it follow the Central District's rule in this regard. Further, there is no duty of the court generally to inform counsel of its failure to follow a local rule. *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995) (courts are granted authority to enforce local rules as they see fit, counsel need not receive warning). Compliance is mandatory, and failure of such can be fatal. *See, e.g., Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 924 (7th Cir. 1994) (deeming facts admitted for purposes of summary judgment upon opposing party failure to follow local rules); *Transamerica Corp.*

9

*v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 143 F.R.D. 189, 191 (N.D. Ill. 1992) (striking a memorandum for failure to follow local rules).

While the absence of earlier remedial action by the clerk of the court or the court may have failed to prevent a party's mistakes from becoming fatal, the absence of a duty on either to act – especially when that party's failures are not known to the court[8] – puts paid to BCC's argument.

4.    The Clerk of the Court's Duties

At the May 19, 2015 hearing, BCC argued that it was the duty of the office of the clerk of the court to have advised BCC that personal delivery of the claim in lieu of filing via electronic means was insufficient. Here BCC also fails to provide a cognizable legal basis to support its position.

As stated above, it is counsel's duty to comply with both national and local rules governing actions before the court, and that duty may not be delegated back to the court. *Aronson v. Health Care Excel, Inc.*, No. 1:05CV1181 DFHWTL, 2007 WL 3091579, at *2 (S.D. Ind. Oct. 19, 2007) (*citing Waldridge*, 24 F.3d at 922) (providing that "a party cannot delegate to the court the task[s set forth in the local rules]"); *see also Landin*, No. 140591. Further, the clerk of the court's acceptance of BCC's incorrectly filed proof of claim carries with it no imprimatur.

Rule 5005(a) states that "[t]he clerk shall not refuse to accept for filing any petition or other paper presented for the purpose of filing solely because it is not presented in proper form as requested by these rules or any local rules or practices." Fed. R. Bankr. P. 5005(a). Rule 5005 prevents the clerk from refusing to accept improper filings. Nonetheless, Rule 5005 and Local Bankruptcy Rule 5005-1(B) continue to govern whether such improper filings are indeed "filed" for the purposes of the Bankruptcy Rules and Local Bankruptcy Rules. In this case, the BCC Claim was not filed per Rule 5005 and Local Bankruptcy Rule 5005-1(B) and, thus, cannot be timely filed per Rule 3002.

This argument must also fail as BCC would not be entitled to rely on the advice of the clerk or its staff that it wishes to have received. The Bankruptcy Rules provide clear instruction. Any reliance on instruction or guidance provided by the office of the clerk of the court, if contrary to the Bankruptcy Code, Bankruptcy Rules or Local Bankruptcy Rules, would not excuse the compliance. *See Neeley v. Murchison*, 815 F.2d 345, 347 (5th Cir. 1987) (rejecting such an argument advanced to defeat a deadline to file adversary complaints). BCC's argument in this regard is, therefore, not well taken.

---

[8]    The ability to discover and correct the failure was entirely within the control of BCC, yet, as the court may only assume, BCC did not check the claims register to verify that its paper claim had been entered. *See Landini v. Bil-Jax Inc.*, No. 140591 (Va. Jan. 30, 2015) (unpublished) (affirming dismissal with prejudice of time-barred complaint not deemed filed until after statute of limitations had run because, although counsel had tendered complaint with what he thought was the proper filing fee within the statute of limitations, counsel had failed to verify filing fee and, thus was short the recent $2 increase in filing fee; counsel did not correctly tender full filing fee until after statute of limitations in part because counsel failed to follow up to ensure the complaint's filing and erroneously relied on the clerk to perform this duty for him), *available at* http://courts.state.va.us/courts/scv/orders_unpublished/140591.pdf (last visited July 13, 2015).

C.  Amendment of the Final Report

As a remedial measure, BCC seeks, without providing any statutory authority, to have the court enter an order amending the Final Report because "it is proper and appropriate." Reply, at 6. Attached to the Amended Motion is a proposed distribution including the BCC Claim as a timely general unsecured claim. The Trustee opposes this request. Response, at 9.

This request must fail for two reasons: First and foremost, because the court declines to deem the BCC Claim as a timely claim. Second, because BCC misapprehends the purpose of a final report and the court's power with respect to it.

Rule 5009 provides that, if such a final report is not objected to, "there shall be a presumption that the estate has been fully administered." Fed. R. Bankr. P. 5009(a). What Rule 5009(a) also makes clear is that the filing of the final report is the trustee's obligation. *Id.*; *see also* 11 U.S.C. § 704(a)(9) (same); 28 C.F.R. § 58.7(1) ("A *chapter 7 trustee must* complete UST Form 101–7–TFR final report (TFR) in preparation for closing an asset case.") (emphasis added).

The purpose of the final report is, therefore, to establish the presumption of full administration. *In re Wade*, 991 F.2d 402, 406-08 (7th Cir. 1993). Once said presumption arises, the case is capable of being closed. 11 U.S.C. § 350(a) ("After an estate is fully administered…, the court shall close the case."); *Wade*, 991 F.2d at 406 n.2.

There is no clear case here, therefore, that the court has the authority to enter an order amending the Final Report, to impose an alternative final report or to order the Trustee to make such an amendment. Once a trustee has certified in a final report that every asset in the estate has been fully administered then, only in light of an objection may the court conclude than the estate is not fully administered. *See* Fed. R. Bankr. P. 5009(a); *In re Schoenewerk*, 304 B.R. 59, 62 (Bankr. E.D.N.Y. 2003). There may also be additional remedies available to an aggrieved creditor, but having the court amend a previously approved final report or ordering the filing of an amended final report as BCC proposes is simply not one of them.

What BCC is really seeking is for its tardily filed claim to be deemed timely and allowed and for the Trustee to be compelled to treat the BCC Claim differently than it is being treated now. For the reasons set forth above, the court will not order the BCC Claim be considered timely. It is not. Allowance of the BCC Claim, as discussed above, is a function of the Bankruptcy Code itself. The BCC Claim is allowed by that function, but is untimely by virtue of the statute and Bankruptcy Rules.

As far as the treatment of the BCC Claim goes, the treatment of late claims in chapter 7 cases is expressly provided for in the Bankruptcy Code. See 11 U.S.C. § 726(a)(3). While the untimeliness of a claim is not the basis for objecting to such claim in chapter 7, *see* 11 U.S.C. § 502(b)(9); *Ebner v. Kaiser (In re Kaiser)*, 525 B.R. 697, 704-05 (Bankr. N.D. Ill. 2014) (Barnes, J.), tardily filed claims will receive a lower priority distribution than timely filed general unsecured claims under section 726.

The Final Report makes clear that timely filed general unsecured claims are not receiving full recovery. As a result, distribution to holders of tardily filed general unsecured claims such as BCC is zero. See 11 U.S.C. § 726(a)(2) and (3). Adding BCC to the Final Report to confirm that it will receive no distributions – exactly what it is receiving under the Final Report as approved – is a

meaningless act, and the law does not require meaningless acts. *In re Chicago Const. Specialties, Inc.*, 510 B.R. 205, 223 (Bankr. N.D. Ill. 2014) (Barnes, J.) (*citing Neece v. John Hancock Mut. Life Ins. Co.*, 914 F.2d 260 (7th Cir. 1990)).

The estate is fully administered whether the final report is amended or not, and the report's purpose has, therefore, been fulfilled.[9] Thus, even if the court has the authority to amend the Final Report or order the issuance of an amended final report, as such an amended final report would be futile with respect to distributions, the court will not do so.

## CONCLUSION

For the foregoing reasons, the Amended Motion will be denied. A separate order will be issued concurrent with this Memorandum Decision.

Dated: July 13, 2015

Timothy A. Barnes
United States Bankruptcy Judge

---

[9] While such an amended report would also reopen the notice period for objecting to that amended final report, there would be no reason to do so as treatment of creditors would not change and as all of BCC's issues can be and are addressed herein. *In re CMGT, Inc.*, 384 B.R. 497, 509 (Bankr. N.D. Ill. 2008) (Squires, J.) ("A prior ruling with respect to the same issue and the same parties in the same case is conclusive.") (*citing Butera v. Apfel*, 173 F.3d 1049, 1053 (7th Cir.1999)).